UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIE RIDDICK            :
                          :
v.                        :  CIV. NO. 03:07CV1029 (HBF)
                          :
JOHN NAPIELLO             :

BENCH RULING

Plaintiff commenced this action pursuant to Section 1983 of Title 42 of the United States Code, alleging that the defendants, Waterbury Police Officers, acting under the color of state law, violated the Plaintiff's Fourth Amendment Right not to be subjected to unreasonable force during the course of an arrest on June 15, 2005. The plaintiff further claimed that certain officers failed to intervene and take reasonable steps to protect the plaintiff from other officers' use of unreasonable force. Under the Court's pendant jurisdiction, the plaintiff also brings a claim of assault and battery.

The case was tried to the Court on September 16, 2008. Testifying were the defendants Richard Innaimo, Robert Cizauskas, Jason Lanoie and John Napiello; plaintiff Willie Riddick, and Gladys Riddick, the plaintiff's mother. Proposed findings of fact and conclusions of law were filed on August 4, 2008 [Doc. #29] and stipulations of fact were filed on September 15, 2008 [Doc. #32].

At trial, judgment entered in favor of Defendants Innaimo,

Cizauskas and Lanoie.[1]  Plaintiff withdrew his claim against the City of Waterbury.

Testimony and evidence adduced at the hearing are summarized below as necessary to explain the Court's findings and conclusions as to the remaining defendant, John Napiello.

FINDINGS OF FACT

The parties stipulated to the following facts. [Doc. #32].

1. On June 15, 2005, the plaintiff was a resident of Waterbury, Connecticut. [Doc. #32].
2. On June 15, 2002, the defendants were all police officers employed by the City of Waterbury and acting under color of state law in the performance of their duties.  [Doc. #32].
3. During the execution of a search and seizure warrant for 38 Elizabeth Street, Waterbury, and the person of Alfred Riddick, the defendant officers detained the individuals present in the common living room while a search was conducted of the premises. [Doc. #32].
4. The plaintiff Willie Riddick was not the subject of the search and seizure warrant, but was one of the individuals inside the apartment at the time of police entry into the premises. [Doc. #32].
5. Among those present inside the apartment were several relatives and friends of the plaintiff, including the

---

[1] The Court granted defendant's oral motion for judgment as a matter of law. [Doc. #33].  The plaintiff identified only Officer Napiello as having contact with him and did not identify any of the other officers as present or in a position to intervene.

2

plaintiff's mother, Gladys Riddick. [Doc. #32].

6. The plaintiff was arrested and transported to the Waterbury Police Department. [Doc. #32].

Based on the credible testimony, the exhibits, and the entire record, the Court finds established the following facts which are relevant to this ruling.

7. On June 15, 2005, Alfred Riddick resided at 38 Elizabeth Street, Second Floor, Waterbury. [Doc. 29].

8. After the search and seizure warrant was signed by a judge of the Superior Court, the detectives developed a plan of execution. [Testimony of Innaimo, Lanoie, Cizauskas.]

9. All persons present during the search of 38 Elizabeth Street were kept in the living room. [Testimony of Lanoie.]

10. Detective Lanoie and Officer Viera were assigned to general security to maintain order in the living room while the search was conducted. [Testimony of Lanoie.]

11. Detectives Innaimo and Lanoie and Sergeant Cizauskas testified that while the search warrant was being executed, plaintiff engaged in disruptive conduct in the living room. [Testimony of Innaimo, Lanoie, Cizauskas.]

12. The police officers ordered plaintiff to cease his disruptive conduct several times. [Def. Ex. 504]

13. Plaintiff became belligerent in his tone, standing up, flailing his arms and challenging the officers to fight. Lanoie handcuffed plaintiff and seated him in a chair to gain control of him. [Testimony of Lanoie.]

14. Plaintiff did not calm down but that he began yelling profanities. [Testimony of Lanoie.]
15. As a result of this disruptive conduct, Officer Ricardo Viera separated plaintiff from the other occupants in the living room of the residence by escorting Mr. Riddick into the kitchen. [Def. Ex. 504].
16. In the kitchen Mr. Riddick continued to yell and physically pulled away from the custody of Officer Viera. [Testimony of Lanoie.]
17. Officer Viera had to brace Willie Riddick up against a refrigerator in the kitchen in order to gain control of him. [Testimony of Lanoie.]
18. Napiello was assigned as the evidence custodian at and was in charge of photographing, logging and securing all evidence found at the scene of 38 Elizabeth Street, Waterbury. [Def. Ex. 504, testimony of Innaimo, Lanoie, Cizauskas, Napiello].
19. Sergeant Napiello did not have any contact with plaintiff while inside 38 Elizabeth Street, Waterbury. [Testimony of Napiello.]
20. Napiello was never in the kitchen. [Testimony of Innaimo, Lanoie and Napiello.]
21. No evidence was found or collected from the kitchen. [Def. Ex. 504].
22. At trial, plaintiff identified Sergeant Napiello as the officer who struck him once in the kitchen.

23. Plaintiff was convicted of assault on a police officer based on the June 15, 2007 arrest. [Def. Ex. 506].

CONCLUSIONS OF LAW

1. Federal question jurisdiction is conferred pursuant to 28 U.S.C. §1331.

2. Section 1983 states, in relevant part, that:

    > Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

3. The Court finds that defendants were acting under color of state law on June 15, 2005.[2]

Fourth Amendment Violation

4. In order to establish a claim under Section 1983 of Title 42 of the United States Code, the plaintiff must demonstrate by a preponderance of the evidence, the following three elements: (1) the defendant acted under color of the authority of the State of Connecticut; (2) the defendant deprived the plaintiff of his constitutional rights; and (3) the acts of the defendant were the proximate or legal cause of the plaintiff's injuries. West v. Atkins, 487 U.S. 42, 48 (1988); Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1984).

---

[2] The parties stipulated that the defendants were acting under the color of state law in their Joint Trial Memorandum [Doc. #29].

5

5.  All claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Graham v. Connor, 490 U.S. 386, 395 (1989).

6.  Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.  United States v. Place, 462 U.S. 696, 703 (1983).

7.  The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  Bell v. Wolfish, 441 U.S. 520, 559 (1979).  Its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Graham v. Connor, 490 U.S. 386, 396 (1989); Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).

8.  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham v. Connor, 490 U.S. 386, 396 (1989); Terry v. Ohio, 392 U.S. 1, 20-22 (1968).

9. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the facts that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-397 (1989).

10. As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 397 (1989).

11. The plaintiff's testimony demonstrated that he had some confusion between this incident and another arrest that took place on 4/27/07.

12. Plaintiff testified repeatedly on direct and cross-examination that he was physically hurt on his right shoulder, left jaw and left side. The medical reports, however, reflect that plaintiff had swelling on his right

jaw. [Pl. Ex. 2 and 3].

13. The Court credits defendants' testimony that plaintiff challenged the officers to a fight and tried to motivate the other individuals present to do the same.

14. The record establishes that plaintiff interfered with the officers' search of 38 Elizabeth Street by acting in a disruptive manner. [Def. Ex. 506]

15. The Court concludes that defendant Napiello did not use any force against the plaintiff, nor was he present in the kitchen when plaintiff alleges that he was injured.

CONCLUSION

Accordingly, judgment shall enter in favor of defendant John Napiello.

ENTERED at Bridgeport this 10th day of December 2008.

                                ___/s/_____
                                HOLLY B. FITZSIMMONS
                                UNITED STATES MAGISTRATE JUDGE